Case 1:22-mj-00276-RMM   Document 1-1   Filed :

Case: 1:22-mj-00276
Assigned to: Judge Meriweather, Robin M.
Assign Date: 12/14/2022
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, Adam Pool, is a Special Agent with the Federal Bureau of Invesitgation ("FBI"). I have been a Special Agent with the FBI since 2005. I have received training in basic law enforcement investigation, complex investigations, interviewing, source handling and surveillance. Through my employment with the FBI, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, investigative interviews, financial investigations, the service of Administrative and Grand Jury Subpoenas, and the execution of search and arrest warrants, including the execution of search warrants involving electronic evidence. Prior to my career as an FBI agent, I was a commissioned Officer in the United States Army. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not contain every fact known by me or the FBI. The dates and times listed in this Affidavit should be read as "on or about."

### *Background: Events at the U.S. Capitol on January 6, 2021*

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00

p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Facts Specific to SCOTT MILLER*

According to closed circuit television ("CCTV"), body-worn camera footage from Metropolitan Police Department ("MPD") officers, and public source video from the U.S. Capitol on January 6, 2021, a man later identified as SCOTT MILLER ("MILLER") assaulted multiple police officers and stole a U.S. Capitol Police riot shield while outside an entrance to the U.S. Capitol on the Lower West Terrace, referred to as "the tunnel." As set out below, there is probable cause to believe that MILLER committed violations of 18 U.S.C. §§ 111 (assault of a federal officer); 231(a) (civil disorder); 641 (theft of government property); 1752(a)(1), (2), and (4) (unlawful entry on restricted buildings or grounds); and 40 U.S.C. §§ 5104(e)(2)(D), (E) and (F) (disorderly conduct).

**A. BOLO #132's Assaults on Officers and Theft of Government Property on January 6, 2021**

According to video footage taken at the U.S. Capitol on January 6, 2021, at approximately 4:16 p.m., a man who was wearing orange ski goggles, a black hooded sweatshirt, a tan coat, a tan backpack, a black and red neck gaiter, dark-colored pants, and black gloves appeared near the tunnel where rioters were actively pushing against the police line in an effort to breach the U.S. Capitol building. The FBI subsequently posted images of this individual under BOLO #132 to its website and asked the public's assistance in identifying him. Below is a still image from CCTV footage depicting BOLO #132 at the tunnel:



At approximately 4:27 p.m., BOLO #132 who was still located on the north side of the tunnel, assaulted a Metropolitan Police Officer ("Victim 1") by striking her/him multiple times with the end of a pole. Below is a still image from Victim 1's body-worn camera footage depicting BOLO #132 swinging a pole at Victim 1:



On or about November 22, 2022, law enforcement interviewed Victim 1. During the interview, Victim 1 was shown the above body-worn camera footage and still image. Victim 1 told law enforcement that s/he remembered the individual depicted above (BOLO #132) and that he hit

her/him with the pole that he was swinging. S/he stated s/he believed BOLO #132 hit her/him on the helmet.

According to CCTV footage, at approximately 4:31 p.m., BOLO #132 was located at the south side of the tunnel where he began to throw objects into the tunnel at MPD officers. Below is a still image taken from a public video ("Public Video 1") [1] depicting BOLO #132 throwing what appears to be a pipe or a pole into the tunnel at officers:



Below is another still image from Public Video 1 depicting BOLO #132 throwing what appears to be a bottle into the tunnel and at officers:

---

[1] Public Video 1 is available at https://www.youtube.com/watch?v=zcRFEYnHWyM. Public Video 1 does not have timestamps, however, I have estimated the approximate time of the events depicted in Public Video 1 by comparing it with CCTV and body worn camera footage depicting the same events.

4



Below is another still image from Public Video 1 depicting BOLO #132 throwing another wooden object into the tunnel and at officers:



Below is another still image from Public Video 1 depicting BOLO #132 throwing a large black box, potentially a speaker, into the tunnel and at officers:



Below is another still image from Public Video 1 depicting BOLO #132 throwing an item of clothing into the tunnel and at officers:



After throwing these items into the tunnel, at approximately 4:33 p.m., BOLO #132 then assaulted a number of officers by striking them with a large blue and white pole. Below are still images from CCTV and Public Video 1, respectively, depicting BOLO #132's assaults:





After swinging the pole and striking multiple officers, BOLO #132 swung the pole again multiple times approximately five seconds later and struck more MPD officers. Below are still images from CCTV depicting BOLO #132 striking MPD officers with the blue and white pole:





After striking officers with the blue and white pole, BOLO #132 then grabbed ahold of a U.S. Capitol Police riot shield being held by two officers ("Officer 1" and "Officer 2") and after a brief struggle, forcibly pulled the U.S. Capitol Police riot shield out of the officers' grip. In the

below BWC still image, BOLO #132's black gloves can be seen gripping the upper left side of the shield and the sleeve of his brown jacket is visible:



Approximately one second later, BOLO #132's torso and head (wearing the orange goggles) can be seen gripping the shield and pulling it away from the officers:



9

Below is a still image from CCTV captured approximately two seconds later depicting BOLO #132 pulling the riot shield away from officers:



According to CCTV footage, BOLO #132 then took the shield and handed it to someone in the crowd before disappearing into the crowd. Below is a still image from Public Video 1 depicting BOLO #132 holding the U.S. Capitol Police riot shield in the crowd:

10



On or about November 22, 2022, law enforcement interviewed Officer 1 and Officer 2 separately. During Officer 1's interview, Officer 1 was shown body-worn camera footage and CCTV footage depicting BOLO #132 taking the riot shield. Officer 1 confirmed that s/he was one of the officers holding the riot shield. Officer 1 also stated that s/he recognized BOLO #132 as the individual who took the shield from her/him and another officer. Similarly, Officer 2 was also shown body-worn camera footage and CCTV footage depicting BOLO #132 taking the riot shield. Officer 2 stated that s/he recognized the gloves of BOLO #132 as the gloves of one of the individuals who took the shield from her/him.

Another public video ("Public Video 2")[2] depicts BOLO #132, who was still located near the tunnel, removing his goggles. Below are zoomed still images from Public Video 2:

---

[2] Public Video 2 is available at https://www.youtube.com/watch?v=nVvWFCQyPXA&t=75s. Public Video 2 does not have timestamps.





    Additionally, law enforcement obtained photographs from a confidential human source ("CHS")[3] that were taken by an anonymous photographer on the grounds of the U.S. Capitol on

---

[3] CHS is an established source who is on a team of open-source researchers who began collaborating shortly after January 6th, 2021, to identify Capitol rioters. CHS' group is motivated by a desire to assist law enforcement regarding the events of January 6, 2021 at the U.S. Capitol. CHS has provided multiple pieces of corroborated information. CHS does not have personal

January 6, 2021. Specifically, below is a photograph provided by the CHS at the entrance to the tunnel on the Lower West Terrace at approximately 4:34 p.m. which depicts BOLO #132 without his goggles on:



Below is an image of BOLO #132 from the above photograph that is zoomed in:



knowledge of the subjects of reporting but rather derives information solely through open-source research.

### B. Identification of BOLO #132 as SCOTT MILLER

Through investigative analysis, law enforcement made a preliminary determination that BOLO #132 was a possible match with a photograph of an individual named SCOTT MILLER on a website for a business in West Virginia ("Company A").

In or around March 2022, law enforcement obtained wage records for MILLER from Company A. These records indicated that MILLER worked for Company A on January 6, 2021.

During the investigation, I served legal process on Company A. On or about April 4, 2022, an employee of Company A ("Employee 1") sent me an email with a screenshot of a text message exchange dated January 5, 2021. Employee 1 informed me via email that the text message was between MILLER and another employee ("Employee 2"). The text message was with phone number XXX-XXX-8070. Below is the screenshot provided to law enforcement by Employee 1:



14

On or about April 26, 2022, law enforcement spoke with an individual who worked at Company A ("Employee 2"). During the interview, Employee 2 viewed multiple photographs of MILLER, including photographs from January 6, 2021. When shown the below photograph, Employee 2 stated that the individual looked like MILLER but also looked like another individual s/he knew. S/he stated that the man in the photograph looked more like MILLER than the other individual s/he knows. [4]



Employee 2 positively identified the man in the below two photographs as MILLER. Employee 2 stated, "Never seen him so red in the face before but looks like Miller."

---

[4] The FBI received tips from other members of the public regarding the photographs of FBI BOLO #132. A number of these tips identified the photographs as depicting an individual other than MILLER.





Employee 2 also identified XXX-XXX-8070 as MILLER's phone number.

On or about April 27, 2022, law enforcement interviewed another employee from Company A ("Employee 3"). During the interview, law enforcement showed Employee 3, the below photograph and Employee 3 stated that the photograph looked familiar, like MILLER.



Employee 3 was shown other photographs of MILLER, including photographs from January 6, 2021 and Employee 3 identified each photograph as depicting MILLER and stated that s/he recognized the jacket MILLER was wearing on January 6, 2021.

## CONCLUSION

Based on the foregoing, your affiant submits there is probable cause to believe that SCOTT MILLER violated 18 U.S.C. § 111(a)(1) and (b), which makes it a crime to (a) forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 as an officer or employee of the United States while engaged in or on account of the performance of official duties; and (b) use a deadly or dangerous weapon or inflict bodily injury during such assault.

Your affiant submits there is also probable cause to believe that MILLER violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant further submits there is probable cause to believe that MILLER violated 18 U.S.C. § 641, which makes it a crime for a person to embezzle, steal, purloin, or knowingly convert

to his use or the use of another, or without authority, sell, convey or dispose of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or receive, conceal, or retain the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

Your affiant also submits that there is probable cause to believe that MILLER violated 18 U.S.C. § 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Finally, your affiant submits there is also probable cause to believe that MILLER violated 40 U.S.C. § 5104(e)(2)(D), (E),  and (F), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings; and (F) engage in an act of physical violence in the Grounds or any of the. Capitol Buildings.

_____
Adam Pool
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 14th day of December 2022.

_____
Honorable Robin M. Meriweather
U.S. MAGISTRATE JUDGE